| | | |
|---|---|---|
| JEAN PONDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 4:09-CV-1763 CAS |
| v. | ) | |
| | ) | |
| VERIZON NORTH, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Jean Ponder asserts claims against her former employer, defendant Verizon North, Inc. ("Verizon"), under the Family and Medical Leave Act, 29 U.S.C. §§ 2601, et seq. ("FMLA"), the Americans with Disabilities Act, 42 U.S.C. §§ 12102, et seq. ("ADA") and the Missouri Human Rights Act, Mo. Rev. Stat. § 213.055 (2000) ("MHRA"). The matter is before the Court on Verizon's motion for summary judgment and plaintiff's motion for partial summary judgment on her FMLA claim. The motions are fully briefed and ready for decision. For the following reasons, the Court will grant in part and deny in part Verizon's motion for summary judgment and deny plaintiff's motion for partial summary judgment.

**Factual Background**

Plaintiff was employed by Verizon from 1994 through October 2008 as a customer sales representative at its Wentzville, Missouri facility. Plaintiff is a union member. Her job duties included taking inbound calls, setting up new phone service for customers, adding services such as call waiting, moving services after a customer's change in address, and placing orders. Verizon has a set of written behavior expectations of its employees, known as the Verizon Code of Conduct, which includes policies against misuse of company benefits and the creation of inaccurate records.

In addition, the relationship between Verizon and plaintiff's union is governed by a Collective Bargaining Agreement. The Collective Bargaining Agreement provides in part that the obtaining or acceptance of sick leave benefits under false pretenses shall be grounds for immediate disciplinary action.

During the relevant time period, plaintiff reported to Stephanie Boschenreither, who in turn reported to Cheryl Charlesworth. In June 2008, plaintiff left work early to care for her daughter who had a fever and was ill with an ear infection. Plaintiff obtained medical care for her daughter, including antibiotics. Several hours later, when plaintiff's daughter was feeling better, plaintiff obtained permission from her daughter's pediatrician to take her along to plaintiff's son's Little League game. While at the game with her daughter, plaintiff was seen by a Verizon employee. Ms. Charlesworth learned of this and suspended plaintiff's employment pending an investigation and possible termination. Verizon took the position that plaintiff's action violated its Code of Conduct. Plaintiff's union negotiated on her behalf and a resolution was reached, under which plaintiff was required to sign a Last Chance Agreement in order to retain her employment. The Last Chance Agreement was in effect for the period June 7, 2008 through June 7, 2009. It provided in part that plaintiff's absenteeism would be scrutinized by management and if she abused or misused any absent time, she could immediately be discharged.

From approximately September 15, 2008 through September 29, 2008, while the Last Chance Agreement was in effect, plaintiff took FMLA leave for a medical condition involving her lower back, spondylosis and/or osteoarthritis. Plaintiff underwent a medical procedure on her back on September 15, 2008, and underwent lower back surgery on September 29, 2008. For three days after the September 29, 2008 surgery, plaintiff was unable to care for herself and stayed in bed on a heating pad. After the three-day period, plaintiff was still unable to go up or down steps and had

to be able to lay down on her heating pad as needed, but was able to comb her hair, brush her teeth, hold a pen and write, and otherwise engage in normal life functions although she remained in pain. Following the surgery, plaintiff was allowed by her physician to drive a car, go to the grocery store, and perform other routine activity that was not stressful or heavy. Plaintiff was instructed by her physician not to remain on her feet or sitting for extended periods of time until October 7, 2008.

Plaintiff requested an extension of her FMLA leave on September 29, 2008, to last through October 5, 2008. On or about October 4, 2008, plaintiff's FMLA leave request extension was approved by Verizon's FMLA Administrator, Metropolitan Life Insurance Company. While the requested extension was pending, plaintiff called Verizon daily to inform them that she would be absent from work. Plaintiff was scheduled to work on Saturday, October 4, 2008 from 10:00 a.m. to 6:30 p.m. On that date, plaintiff called Verizon and stated she still needed to be on leave because of severe back pain and noted that her FMLA leave request was pending. Plaintiff was next scheduled to work on Tuesday, October 7, 2008.

At approximately 6:50 p.m. on Saturday, October 4, 2008, plaintiff and her husband went to a potluck dinner at the home of friends who were hosting an outdoor party to watch a televised college football game. Plaintiff's husband took a chair for her to sit in, and plaintiff had been sitting in the chair at the party for approximately fifteen minutes when she was observed by a Verizon supervisor, Lori Eaklor. When plaintiff saw Ms. Eaklor, she told her husband they had to leave, a friend helped her out of the chair, and she walked to their vehicle. Ms. Eaklor reported plaintiff's presence at the party to Ms. Charlesworth.

On Monday, October 6, 2008, plaintiff called Verizon and was transferred to Ms. Charlesworth, who informed plaintiff she was suspended pending an investigation because she had been seen at the party on October 4 while on FMLA leave. On October 10, 2008, in a telephone

conversation with Ms. Charlesworth and a union representative, plaintiff was informed she was being terminated from employment for violating the Last Chance Agreement by attending the party on October 4, 2008 while she was on FMLA leave. At the time plaintiff's employment was terminated, Verizon knew she had been on FMLA-approved leave on October 4, 2008, and that members of Verizon's human resources department had recommended plaintiff not be terminated. Ms. Charlesworth made to decision to proceed with plaintiff's termination because she believed it was "in the best interest of our employee morale to maintain appropriate discipline for the unethical behavior Jean has displayed." (Charlesworth Dep. Ex. 1).

Plaintiff filed a charge of discrimination on April 1, 2009, and on September 30, 2009, the U.S. Equal Employment Opportunity Commission issued plaintiff a Notice of Right to Sue letter. Plaintiff filed this action on October 23, 2009.

**Legal Standard**

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. See Conolly v. Clark, 457 F.3d 872, 876 (8th Cir. 2006).

Where parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine dispute of material fact exists and whether the movant is entitled to judgment as a matter of law. Husinga v. Federal-Mogul Ignition Co., 519 F.Supp.2d 929, 942 (S.D. Iowa 2007). "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." Wermager v. Cormorant Township Bd., 716 F.2d 1211, 1214 (8th Cir.1983).

**Discussion**

### A. Family and Medical Leave Act Claim

### I.

In Count I of the First Amended Complaint, plaintiff asserts that Verizon violated the FMLA by interfering with her rights under the Act when it terminated her employment while she was on FMLA leave.

Under the FMLA, eligible employees are entitled to "up to twelve weeks of unpaid leave during a twelve-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." Murphy v. FedEx Nat'l LTL, Inc., 618 F.3d 893, 898 (8th Cir. 2010) (quoting 29 U.S.C. § 2612(a)(1)(D)). The FMLA defines "serious health condition" as any "illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). The FMLA also provides that "[w]hen an employee completes her FMLA leave, she is generally entitled to be restored to the position she occupied before she took leave." Throneberry v. McGehee Desha County Hosp., 403 F.3d 972, 977 (8th Cir. 2005) (citing 29 U.S.C. § 2614(a)(1)).

"Because the FMLA grants valuable leave and restoration rights to eligible employees, it also secures these rights against unlawful infringement by prohibiting employers from discriminating against employees for exercising their rights to take FMLA leave." Dollar v. Smithway Motor Xpress, Inc., 2010 WL 3723900, at * 7 (N.D. Iowa Sept. 15, 2010) (citing cases). The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the Act. 29 U.S.C. § 2615(a)(1).

"There are two types of claims under the FMLA: interference and retaliation." Estrada v. Cypress Semiconductor (Minn.) Inc., 616 F.3d 866, 871 (8th Cir. 2010). The Eighth Circuit has observed that "[c]onfusion often arises as to whether an employee's FMLA claim is really about interference with his substantive rights, not discrimination or retaliation." Stallings v. Hussmann

Corp., 447 F.3d 1041, 1051 (8th Cir. 2006) (internal quotation marks and quoted case omitted).  The type of FMLA claim plaintiff asserts is in dispute here.

"Interference" occurs when an employer's action deters or attaches negative consequences to an employee's exercise of FMLA rights.  See 29 U.S.C. § 2615(a)(1) (it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA); Stallings, 447 F.3d at 1050.  "'The difference between the two claims is that the interference claim merely requires proof that the employer denied the employee his entitlements under the FMLA, while the retaliation claim requires proof of retaliatory intent.'"  Wisbey v. City of Lincoln, Neb., 612 F.3d 667, 675 (8th Cir. 2010) (quoting Stallings, 447 F.3d at 1051).  FMLA retaliation claims are analyzed using the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), but the Eighth Circuit has specifically rejected application of the McDonnell Douglas analysis to FMLA interference claims.  See Stallings, 447 F.3d at 1051 n.3; Rankin v. Seagate Techs., Inc., 246 F.3d 1145, 1148 (8th Cir. 2001).

For an FMLA interference claim, the "employee must show only that he or she was entitled to the benefit denied."  Stallings, 447 F.3d at 1051 (quoted case omitted).  A district court in this Circuit has stated that to establish an interference claim, a plaintiff must prove the following five elements: (1) she was an "eligible employee" under 29 U.S.C. § 2611(2); (2) the employer was an "employer" under 29 U.S.C. § 2611(4); (3) she was entitled to FMLA leave, 29 U.S.C. § 2612(a)(1); (4) she gave the employer notice of her intent to take FMLA leave, 29 U.S.C. § 2612(e)(1); and (5) the employer denied her FMLA benefits to which she was entitled.  Dollar, 2010 WL 3723900, at *8 (citing Wysong v. Dow Chem. Co., 503 F.3d 441, 447 (6th Cir. 2007)).  As discussed below, the only element in dispute in this case is the final one.

The Eighth Circuit has recognized that an employee can prove interference with an FMLA right regardless of the employer's intent. Throneberry, 403 F.3d at 979. An employee can prevail under an interference theory if she was denied "substantive rights under the FMLA for a reason connected with her FMLA leave." Id. (quoted case omitted). "[E]very discharge of an employee while she is taking FMLA leave interferes with an employee's FMLA rights. However, the mere fact of discharge during FMLA leave by no means demands an employer be held strictly liable for violating the FMLA's prohibition of interfering with an employee's FMLA rights." Id. at 980. "An employee who requests FMLA leave has no greater protection against termination for reasons unrelated to the FMLA than she did before taking the leave." Estrada, 616 F.3d at 871. Accordingly, where an employer's reason for dismissal is insufficiently related to FMLA leave, the reason will not support the employee's recovery. Throneberry, 403 F.3d at 979. Furthermore, an employer who "interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights." Id. at 977; see also Bacon v. Hennepin County Med. Ctr., 550 F.3d 711, 715 (8th Cir. 2008).

Verizon moves for summary judgment, asserting that plaintiff cannot establish a prima facie case of FMLA retaliation discrimination because she cannot show that a causal connection exists between her exercise of FMLA rights and her termination, as required under the third prong of the McDonnell Douglas framework. Verizon argues that the facts show plaintiff's termination was not in retaliation for taking FMLA leave, but rather because she was caught fraudulently abusing that leave.

Plaintiff responds that her complaint asserts an interference claim under 29 U.S.C. § 2615(a)(1) because she was terminated from employment while she was on FMLA leave and, under Eighth Circuit precedent, the termination constitutes interference with her FMLA rights as a

matter of law. In its reply, Verizon insists that plaintiff necessarily brings a retaliation claim, because she does not allege that it denied her requests to take FMLA leave. Verizon cites no case law in support of its position.

Verizon's position is not well taken. The FMLA's anti-interference provision encompasses more employer conduct than the mere denial of an employee's request for FMLA leave. This principle is discussed at length in the Stallings and Throneberry cases Verizon cites in its reply memorandum. "An employer is prohibited from interfering with, restraining, or denying an employee's exercise of or attempted exercise of any right contained in the FMLA. 29 U.S.C. § 2615(a)(1)." Stallings, 447 F.3d at 1050. "Interference includes 'not only refusing to authorize FMLA leave, but discouraging an employee from using such leave. It would also include manipulation by a covered employer to avoid responsibilities under FMLA.' 29 C.F.R. § 825.220(b)." Id. "An employer's action that deters an employee from participating in protected activities constitutes an 'interference' or 'restraint' of the employee's exercise of his rights." Id. Moreover, as stated above, the Eighth Circuit has held that "every discharge of an employee while he is taking FMLA leave interferes with an employee's FMLA rights." Throneberry, 403 F.3d at 980.

Although the First Amended Complaint references the language of both the interference and retaliation provisions of the FMLA,[1] plaintiff asserts in both her opposition memorandum and her motion for summary judgment that she brings only an interference claim. The facts plaintiff alleges

---

[1]See First Amended Complaint at 3, ¶ 15 ("Section 2615 of the FMLA makes it unlawful for any employer to interfere with, restrain or deny . . . any right of an employee provided under the FMLA, and the statute expressly makes it unlawful for any employer to discharge, or in any other manner, discriminated against an employee for engaging in any practice or activity protected by the Act."). This paragraph invokes language from both the FMLA's interference provision, 29 U.S.C. § 2615(a)(1), and its retaliation provision, 29 U.S.C. § 2615(a)(2).

fall within the FMLA's interference provision as interpreted in Eighth Circuit jurisprudence, and therefore the Court accepts plaintiff's characterization of her claim.

Because plaintiff alleges that she was discharged while taking FMLA leave, she has established a prima facie case of FMLA interference. See Throneberry, 403 F.3d at 980. Consequently, Verizon bears the burden to prove it would have made the same decision had plaintiff not exercised her FMLA rights. See id. Verizon's motion for summary judgment does not discuss plaintiff's claim under the correct analytical framework, as it stubbornly insists that plaintiff has asserted a retaliation claim and frames its arguments accordingly. Although Verizon contends it had a valid reason to terminate plaintiff's employment, it makes no effort to meet its burden to show it would have made the same decision if plaintiff had not exercised her FMLA rights. Verizon's motion for summary judgment should therefore be denied.

## II.

Plaintiff moves for summary judgment on her FMLA interference claim, asserting that she was eligible for and entitled to take FMLA leave, she provided sufficient notice to her employer, and Verizon denied her the benefits to which she was entitled by terminating her employment during FMLA leave. Plaintiff contends that strict liability exists under the FMLA for interference, and asserts that she is entitled to judgment as a matter of law based on the allegations in paragraphs 1 through 17 of the First Amended Complaint.

As discussed above, the Eighth Circuit has unequivocally held that the FMLA is not a strict liability statute. Throneberry, 403 F.3d at 980. Plaintiff's primary argument for summary judgment is therefore fatally flawed. In response to plaintiff's motion, Verizon continues to insist that plaintiff's claim is one for FMLA retaliation and that plaintiff cannot meet her burden to establish a causal connection between her termination and her exercise of rights under the FMLA. As discussed above, this position is without merit because plaintiff's claim is for FMLA interference, and the burden rests with Verizon to establish it would have made the decision to terminate plaintiff's employment if she had not taken FMLA leave. See Throneberry, 403 F.3d at 980.

In her reply, plaintiff concedes, as she must, that the FMLA is not a strict liability statute, but argues she is entitled to judgment as a matter of law because Verizon has repeatedly stated it terminated plaintiff when she committed FMLA fraud, which then triggered her termination under the Last Chance Agreement. Plaintiff argues that the precipitating event of her termination is, by definition, sufficiently related to FMLA leave to entitle her to judgment. While this argument has some appeal, it is substantially weakened by the fact that plaintiff does not cite any factually similar illustrative cases in support of her argument. Plaintiff also makes the simplistic argument that she did not commit FMLA fraud and therefore she should prevail as a matter of law.

Although Verizon's opposition incorrectly focuses on the <u>McDonnell Douglas</u> analysis, it also argues that plaintiff's termination was based on her breach of the Last Chance Agreement, which provided that if plaintiff abused or misused any absent time, she would immediately be discharged, and that it had a reasonable, good faith belief plaintiff had abused her leave because she was seen at a social event when she was claiming to be too ill to work. The Court finds, based on its review of the entire summary judgment record, that Verizon sufficiently raises an issue of material fact as to whether it would have terminated plaintiff's employment even if she had not taken FMLA leave. Plaintiff's motion for summary judgment should therefore be denied.

**B. Americans with Disabilities Act Claim**

In Count II of the First Amended Complaint, plaintiff alleges that her chronic spinal disability is a qualifying disability under the ADA, and that Verizon discharged her because of her disability in violation of the ADA. To obtain relief under the ADA, plaintiff must show that she (1) has an ADA-qualifying disability; (2) is qualified to perform the essential functions of her position with or without reasonable accommodation; and (3) suffered an adverse employment action as a result of her disability. <u>Norman v. Union Pacific R.R. Co.</u>, 606 F.3d 455, 459 (8th Cir. 2010).

Verizon asserts that it is entitled to summary judgment because plaintiff cannot establish that she has a disability within the meaning of the ADA, that her alleged disability was a factor in her discharge, or that its legitimate, nondiscriminatory reason for her termination was a pretext for illegal discrimination. With respect to whether plaintiff has an ADA-protected disability, Verizon argues that when plaintiff's testimony with respect to her back condition is viewed in the light most favorable to her, it is clear she is not disabled as a matter of law.

Plaintiff's response to Verizon's arguments concerning her ADA claim states in its entirety:

Defendant misunderstands Plaintiff's ADA claims. **Plaintiff's ADA Count, in this case, goes forward in time, not backward**.

The Defendant argues that Plaintiff cannot prove she has a disability as defined by the ADA. To prove the first element of an ADA claim, the Defendant admits the Plaintiff has a chronic back disability which she has suffered from for years. Plaintiff's back condition is worse, now, than it was before her surgery. (Ponder Deposition, Tr. 63). **The record, when fully developed in this area, will show that Plaintiff's now permanent bone-on-bone disc discomfort, which resulted in her termination, made it impossible for the Plaintiff to request a reasonable accommodation for such disability, because she was terminated for fraudulently claiming Family Medical Leave**. Further, Plaintiff has not filed a Motion for Summary Judgment, as material facts relating to medical and to the extent of Plaintiff's disability, are not yet fully set out in this record, as to the ADA Count. <u>Roberts v. Park Nicollet Health Services</u>, 528 F.3d 1123 (C.A. 8 2008).

Pl.'s Opp. Mem. at 11 (emphasis added).

The Court interprets plaintiff's response as asserting that her disability is based on her back condition, which she alleges in the complaint to be spinal osteoarthritis and/or spondylosis. Plaintiff does not specify in the complaint or motion briefing what major life activity or activities her claimed disability substantially limits.

Verizon replies that plaintiff cannot prove she has a disability within the meaning of the ADA because she cannot establish that her back condition substantially limits a major life activity. Verizon also argues that plaintiff has not provided any evidence her claimed disability was even a contributing factor to her discharge in October 2008. With respect to plaintiff's contention that her ADA claim "goes forward in time," Verizon questions how plaintiff's claimed future disability could be the basis for or a contributing factor to her discharge in October 2008.

Courts apply a three-part test to determine whether a plaintiff has an actual disability under the ADA. <u>See</u> <u>Toyota Motor Mfg., Kentucky, Inc. v. Williams</u>, 534 U.S. 184 (2002). First, the plaintiff must show the presence of a "mental or physical impairment." <u>Id.</u> at 194. The plaintiff

must then show that the impairment affects a "major life activity."  Id.  Third, the plaintiff must show that the impairment "substantially limits" that major life activity.  Id.[2]

### 1. Physical Impairment

Verizon contends that plaintiff has failed to allege a qualifying physical impairment and states that plaintiff's only complaint is that she cannot "stay in one position for very long."  Under the ADA, a "physical impairment" includes "any physiological disorder or condition [affecting the] musculoskeletal [body system]."  Gretillat v. Care Initiatives, 481 F.3d 649, 652 (8th Cir. 2007) (quoting 45 C.F.R. § 84.3(j)(2)(i) (2005)).  Plaintiff testified that she has spondylosis, a painful lower  back condition.  She testified that for three days after her back surgery on September 28, 2008, she was in bed on a heating pad and unable to get up, but after those three days she could carry out normal functions such as combing her hair, brushing her teeth, and writing with a pen or pencil.  Ponder Dep. at 32.  Plaintiff testified that after the surgery she could not go up or down the steps in her house and had to be able to lay down on her heating pad whenever needed.  Id. at 33.  Plaintiff also testified that as of the time of her deposition, as a result of her lower back pain, she cannot sit or walk for more than two hours without having to stop, put her feet up, lay down, sit down, or "just have different types in my movements."  Id. at 36.

---

[2]The Court is aware that amendments to the ADA which took effect on January 1, 2009, supersede the Supreme Court's prior admonitions to, among other things, narrowly construe the ADA's "substantially limits" language, see Toyota Motor, 534 U.S. at 196-97.  The Eighth Circuit has indicated application of the ADA amendments is inappropriate in a case filed before the amendments became effective.  See Kirkeberg v. Canadian Pacific Ry., 619 F.3d 898, 904 n. 2 (8th Cir. 2010).  Although plaintiff commenced this action after the amendments became effective, the case arises out of conduct that occurred prior to the amendments' effective date, and plaintiff has not argued that they should apply to this case.  Cf. Landgraf v. USI Film Prods., 511 U.S. 244, 280 (1994) (concluding that if a statute would "increase a party's liability for past conduct, or impose new duties with respect to transactions already completed," the presumption is that "it does not govern absent clear congressional intent favoring such a result").

Plaintiff's lower back condition may qualify as a "physical impairment" under the ADA. See Wood v. Crown Redi-Mix, Inc., 339 F.3d 682, 685-86 (8th Cir. 2003) (defendant conceded that plaintiff had a physical impairment under the ADA where he suffered a back injury that resulted in nerve damage including numbness in parts of the toes of his left foot and left leg, his left knee collapsed, and he walked with a cane on occasion). The Court need not decide whether plaintiff's condition is a physical impairment under the ADA, however, because plaintiff cannot establish other elements of the "qualified individual with a disability" standard.

## 2. Impairment Limits a Major Life Activity

Assuming for purposes of summary judgment that plaintiff has a physical impairment under the ADA, "[m]erely having an impairment does not make one disabled for purposes of the ADA." Toyota Motor, 534 U.S. at 195. "Claimants also need to demonstrate that the impairment limits a major life activity." Id. Major life activities are "activities that are of central importance to daily life." Id. at 197.

The complaint is silent as to which major life activity is limited by plaintiff's impairment, and plaintiff does not discuss the issue in her response to Verizon's motion for summary judgment or in her own motion for summary judgment. Because the only relevant evidence in the summary judgment record is plaintiff's deposition testimony that her back condition limits her from sitting or walking for more than two hours at a time, the Court interprets the complaint as claiming a limitation on the major life activities of walking and sitting. The Eighth Circuit Court of Appeals has held that both sitting and walking are major life activities. Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 948 (8th Cir. 1999).

### 3. Impairment Substantially Limits a Major Life Activity

The Supreme Court has instructed that the word "'[s]ubstantially' in the phrase 'substantially limits' suggests 'considerable' or 'to a large degree.'" Toyota Motor, 534 U.S. at 196 (quoting Webster's Third New International Dictionary 2280 (1976)). "The word 'substantial' thus clearly precludes impairments that interfere in only a minor way with [a major life activity] from qualifying as disabilities." Id. (citing Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 565 (1999)). As a result, to show that a major life activity is substantially limited, a plaintiff must have an impairment that "prevents or severely restricts" the major life activity. Wood, 339 F.3d at 685 (citing Toyota Motor, 534 U.S. at 198).

The nature, severity, duration and long-term impact of the impairment are relevant factors in deciding whether the impairment substantially limits a major life activity. Gretillat, 481 F.3d at 652; 29 C.F.R. app. § 1630.2(j). An impairment is only considered substantially limiting if "an individual is significantly restricted as to the condition, manner or duration under which . . .the average person in the general population can perform that same major life activity." Gretillat, 481 F.3d at 652 (quoted case omitted). "Thus, for example, an individual who, because of an impairment, can only walk for *very brief periods of time* would be substantially limited in the major life activity of walking." 29 C.F.R. app. § 1630.2(j) (emphasis added).

Plaintiff testified she cannot walk for more than a two-hour period. The Eighth Circuit has held that physical conditions or impairments causing walking restrictions comparable to or more severe than plaintiff's do not constitute a substantial limitation on the major life activity of walking under the ADA. See, e.g., Gretillat, 481 F.3d at 653 (where plaintiff had knee replacement surgery and subsequently suffered pain while walking and had difficulty walking long distances, her walking

limitations were not substantial under the ADA); Wood, 339 F.3d at 685 (where plaintiff could not walk more than one-quarter of a mile without resting, was numb in parts of the toes on his left foot and his left leg, his left knee occasionally collapsed, and he walked with a cane on occasion, his ability to walk was moderately limited, but his restriction on walking was not severe); Weber v. Strippit, Inc., 186 F.3d 907, 914 (8th Cir. 1999) (plaintiff who had difficulty walking long distances or climbing stairs without getting fatigued had only a "moderate" limitation on a major life activity and was not "disabled" under the ADA); see also Kelly v. Drexel University, 94 F.3d 102, 106 (3rd Cir. 1996) (plaintiff who could not walk more than a mile, could not jog, and had to move slowly and hold the handrail while climbing stairs was not substantially limited in his ability to walk as a matter of law).

The Eighth Circuit has also held that a physical condition or impairment causing a sitting restriction significantly more severe than plaintiff's was not a substantial limitation on the major life activity of sitting. See Helfter v. United Parcel Service, Inc., 115 F.3d 613, 616 (8th Cir. 1997) (plaintiff who could not sit for longer than 30 minutes could not establish disability under the ADA); see also Maclin v. SBC Ameritech, 520 F.3d 781, 787 (7th Cir. 2008) (plaintiff who could not sit for more than two hours without taking a break did not establish an ADA-cognizable disability); Squibb v. Memorial Med. Ctr., 497 F.3d 775, 785 (7th Cir. 2007) (plaintiff who could not sit for more than 30 minutes was not substantially limited in the major life activity of sitting); Green v. R.R. Donnelley & Sons Co., 2007 WL 2815573, at *5 (N.D. Ohio Sept. 26, 2007) (plaintiff who could not sit for more than one or two hours, with fifteen minutes breaks, was not disabled under the ADA); Kirkendall v. United Parcel Service, Inc., 964 F. Supp. 106, 111 (W.D.N.Y. 1997) (plaintiff's "inability to sit for more than 3 hours at a time . . . does not constitute a disability within

17

the meaning of the ADA"); <u>Horth v. General Dynamics Land Sys., Inc</u>., 960 F. Supp. 873, 878 (M.D. Pa. 1997) (inability to sit more than two hours did not constitute substantial limitation on major life activity of sitting).

Based on this authority, the Court concludes as a matter of law that plaintiff cannot establish her back impairment substantially limits her in the major life activities of sitting or walking, or any other major life activity under the ADA. Plaintiff is therefore not disabled within the meaning of the ADA, and Verizon's motion for summary judgment on her ADA claim should be granted. As a result, the Court does not address Verizon's other arguments in support of its motion for summary judgment on this claim.

C. **Missouri Human Rights Act Claim**

Verizon also moves for summary judgment on plaintiff's disability discrimination claim under the MHRA. In Count III, plaintiff alleges that she was and is disabled by spinal osteoarthritis which substantially limits her major life activities, and that Verizon committed an unlawful discriminatory employment practice in violation of the MHRA when it terminated her employment because of her disability. To establish a prima facie case of employment disability discrimination under the MHRA, plaintiff must show that: (1) she is a member of a protected class because she has a disability protected by the statute, (2) the employer took an adverse action against the plaintiff, and (3) there is evidence from which it may be inferred that the plaintiff's protected status was a contributing factor in the employer's adverse action. <u>Gamber v. Missouri Dep't of Health and Senior Services</u>, 225 S.W.3d 470, 475 (Mo. Ct. App. 2007).

Verizon asserts that plaintiff cannot establish she has a disability within the meaning of the MHRA, that her alleged disability was a factor in her discharge, or that its legitimate, nondiscriminatory reason for her termination was a pretext for illegal discrimination.

The Missouri Supreme Court has held that "Missouri's discrimination safeguards under the MHRA . . . are not identical to the federal standards and can offer greater discrimination protection." Daugherty v. City of Maryland Heights, 231 S.W.3d 814, 819 (Mo. 2007) (en banc). While Missouri courts are guided by federal employment discrimination case law that is consistent with Missouri law, id., if the language of the MHRA provision is "clear and unambiguous, then federal case law which is contrary to the plain meaning of the MHRA is not binding." Id. at 819-20 (quoted case omitted). Most significantly, "Nothing in [the] statutory language of the MHRA requires a plaintiff to prove that discrimination was a substantial or determining factor in an employment decision; if consideration of age, disability, or other protected characteristics contributed to the unfair treatment, that is sufficient." Id. at 820.

The MHRA defines "disability" as a "physical or mental impairment which substantially limits one or more of a person's major life activities, being regarded as having such an impairment, or a record of having such an impairment, which with or without reasonable accommodation does not interfere with performing the job . . . .'" Mo. Rev. Stat. § 213.010(4). A "disability under the statute must substantially limit or be perceived to substantially limit a major life activity such as 'communication, ambulation, self-care, socialization, education, vocational training, employment and transportation.'" Cook v. Atoma Int'l of America, Inc., 930 S.W.2d 43, 46-47 (Mo. Ct. App. 1996) (quoting Mo. Code Regs. Ann. tit. 8 § 60-3.060(1)(C)); see also Medley v. Valentine Radford Commc'ns, Inc., 173 S.W.3d 315, 320-21 (Mo. Ct. App. 2005) ("[I]n order to be disabled under the

MHRA, a person must have an impairment that limits a major life activity and with or without reasonable accommodation that impairment must not interfere with performing a job.")

Where, as here, the parties dispute whether plaintiff has a disability within the meaning of the MHRA, the Court must determine whether plaintiff's claim survives summary judgment on the issue of whether she has a disability within the protections of the MHRA, prior to applying the MHRA's "contributing factor" analysis.  See Daugherty, 231 S.W.3d at 820.  Plaintiff was "substantially limited in performing a major life activity for purposes of the MHRA if [s]he was 'unable to perform' or 'significantly restricted as to the condition, manner or duration under which' [s]he could perform a particular major life activity."  Id. at 821 (quoting Epps v. City of Pine Lawn, 353 F.3d 588, 592 (8th Cir. 2003)).

Plaintiff's MHRA disability claim fails for the same reasons as her ADA claim.  Plaintiff' cannot establish an issue of fact as to whether she is disabled within the meaning of the MHRA because her back impairment, which limits her to two hours of continuous walking and sitting, does not significantly restrict the condition, manner or duration of her ability to walk or sit.  The parties did not cite and the Court has not found any Missouri cases which address sitting and walking restrictions in the context of MHRA disability discrimination, but federal cases discussed above interpreting the ADA are persuasive because the definition of disability is substantially the same under the MHRA and ADA.  See Gretillat, 481 F.3d at 653 (walking restrictions); Wood, 339 F.3d at 685 (same); Helfter, 115 F.3d at 616 (sitting restrictions).

The Court concludes as a matter of law that plaintiff's back impairment does not substantially limit any of her major life activities under the MHRA, and therefore she is not "disabled" within the meaning of the statute.  As a result, Verizon is entitled to summary judgment

on plaintiff's MHRA claim, and the Court need not address its other arguments concerning this claim.

**Conclusion**

For the foregoing reasons, the Court will deny defendant Verizon North. Inc.'s motion for summary judgment with respect to plaintiff's FMLA claim, and deny plaintiff Jean Ponder's motion for partial summary judgment on that claim. The Court will grant Verizon's motion for summary judgment with respect to plaintiff's ADA and MHRA disability discrimination claims.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Verizon North, Inc.'s motion for summary judgment is **GRANTED** in part and **DENIED** in part; said motion is **GRANTED** as to plaintiff's Americans with Disabilities Act and Missouri Human Rights Act claims (Counts II and III), and **DENIED** as to plaintiff's Family and Medical Leave Act claim (Count I). [Doc. 29]

**IT IS FURTHER ORDERED** that plaintiff Jean Ponder's motion partial for summary judgment is **DENIED**. [Doc. 30]

An appropriate partial judgment will accompany this memorandum and order.

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  23rd  day of November, 2010.